## Thompson *vs.* Stevens.

Where property attached was permitted to remain in the hands of the debtor, on his procuring one to become recceiptor for the same, and such debtor placed in the hands of the recceiptor certain other property, as a pledge to secure him for the liability thus incurred, with power. to sell and apply the proceeds to the payment of the principal debt, it was *held*, that the pledge was for a good and valuable consideration, and while the liability continued, the property pledged could not be attached by a creditor of the pledgor.

Replevin for a brown mare. The defendant pleaded *non cepit*, and filed a brief statement, alleging that at the time of the supposed taking, he was a deputy sheriff, and had in his hands for service, a writ against *Daniel Pottle* in favour of *Alpheus Shaw*, by virtue of which he attached said mare, the same being the property of said *Pottle*.

The plaintiff proved that in *October*, 1830, one *Harrison Blake* sued out a writ of attachment against said *Pottle*, and by virtue thereof caused *a light red horse, cow, gig, sleigh and harness* to be attached ; that at the time of the attachment, the said *Pottle* procured the plaintiff in this action to become receiptor, and the property was left in *Pottle's* possession. Some time in the latter part of the year 1830, *Pottle* put into the hands of the plaintiff a *dark red* mare, to secure him as receiptor, and authorised him to sell or dispose of the mare, and to apply the proceeds towards the payment of the *Harrison Blake* debt. On the second Monday of *September*, 1831, the plaintiff exchanged said mare with one *Johnson*, and received the *brown mare* replevied in this action, and $5 in addition. The writ of replevin was served *Sept.* 27, 1831, and in *October* following the mare was sold at auction, by *Thompson's* direction, and the proceeds were paid over to satisfy the *Blake* debt.

The defendant contended, that the plaintiff had not such an interest in the brown mare as would enable him to maintain this suit and defeat the attachment made on *Shaw's* writ. And so the presiding Judge ruled, for the purpose of having that question settled by the full Court, before the defendant should offer evidence, as he proposed to do, to show the transaction between *Pottle* and the plaintiff fraudulent. The plaintiff became nonsuit, with leave to move to have the nonsuit set aside, if, in the opinion of the Court, his evidence unrebutted was sufficient to enable him to maintain the action.

*Mitchell*, for the plaintiff.

The nonsuit ought not to stand. The case of *Woodman v. Trafton*, 7 *Greenl.* 178, is plainly distinguishable from this. That, was a case between the original attaching officer, and one who had purchased of the debtor. This, is an action by a receiptor, for property put into his hands, to secure him for the liability incurred as receiptor. The plaintiff thus acquired a special property, and had the absolute possession, with which no stranger had a right to interfere.

The consideration for the pledge of the mare to the plaintiff, was a valuable one. Even in ordinary cases, the property at-

tached and receipted for, would be liable to many accidents, which would render the receiptor liable. Much more so would it be the case, where the property attached goes back into the hands of the debtor.

*Adams,* for the defendant.

To maintain replevin, the plaintiff must have a general, or special property. A receiptor for property attached, has no such property. *Ludden v. Leavitt,* 9 *Mass.* 104 ; *Warren v. Leland,* 9 *Mass.* 265 ; *Perley v. Foster,* 9 *Mass.* 112.

No sufficient consideration passed from the plaintiff to *Pot·tle,* when the dark red mare was placed in his hands. For, though the property attached was permitted to go back again into the hands of the debtor, yet the attachment and lien were not thereby defeated. *Woodman v. Trafton,* 7 *Greenl.* 178 ; *Maine Stat. ch.* 60, *sec.* 34.

The plaintiff then, wanted no security ; — the law had already sufficiently secured him. The brown mare therefore, at the time of the exchange, became the property of *Pottle,* as the red one had been, and as his, was liable to *Shaw's* attachment.

MELLEN C. J. delivered the opinion of the Court.

From the facts reported it appears that the plaintiff, having become the surety of *Pottle,* at his request, for the safe keeping and return to an officer of certain personal property which he had attached, belonging to *Pottle,* received of him a dark red mare as a pledge to secure him against eventual loss on account of such suretyship. The mare was placed in the plaintiff's possession, with power to sell or dispose of the same to the best advantage, applying the proceeds towards payment of the debt due to *Blake* ; at whose suit the property receipted for had been attached. Was the pledge given for a lawful purpose, and for a good and valuable consideration ? The purpose appears to have been a commendable one, but it is contended that there was no valid consideration. To establish this position and shew that the plaintiff has none of the rights of a surety, the counsel has cited the 34th section of chapter 60 of the revised statutes, which declares " that when *hay in a barn, sheep, horses,*

" or *neat cattle* are attached on mesne process, at the suit of a
" *bona fide* creditor, and are suffered by the officer, making
" such attachment, to remain in the possession of the debtor,
" on security given for the safe keeping or delivery thereof to
" such officer, the same shall not, by reason of such possession
" of the debtor, be subject to a second attachment, to the pre-
" judice of the first attachment." The argument is, that as
the *lien* created by *Blake's* attachment continued upon the
property attached and receipted for, the plaintiff needed no in-
demnity from *Pottle,* on account of his suretyship, and, of
course, could have no *valuable* interest in the pledge, or lose
any rights by the defendant's attachment. Without pausing to
examine the merits of this argument on the facts *assumed,* the
*real* facts in the case will show at once that it has no legal
foundation ; for although *some* of the property, for which the
plaintiff gave his accountable receipt, is of the kind mentioned
in the above quoted section, yet *three* of the articles are not of
that description, and the legal provision has no relation to them ;
as to these, therefore, at least, the plaintiff was a surety of *Pot-
tle,* possessing the rights of a surety ; and the pledge was given
upon a good and valuable consideration to protect him from
ultimate loss by reason of his suretyship. The mare, for this
reason, while she was held as a pledge, in his possession, was
not liable to attachment for the debts of *Pottle.* 1 *Pick.* 389.
By a recent statute, the law on this point has been altered in
*Massachusetts ;* and it would seem that if a similar statute were
passed in this State, it would be calculated to secure the rights
of creditors, and in many instances, prevent fraudulent proceed-
ings on the part of debtors, especially in those cases where the
pledgee is *not empowered to dispose of the pledge.* The mare,
being thus pledged to the plaintiff, was disposed of to *Johnson,*
in exchange for the mare now in dispute ; and she became the
property of *Pottle,* as a pledge to the plaintiff, in the same man-
ner as the mare first named ; substituted in her stead and for
the original purpose. She, therefore, was not liable to *Shaw's*
attachment. We are to decide this cause according to the
rights of the parties at the time the present action was com-
menced. If it was *then* maintainable, the sale of the mare

*since* does not change the principle. It appears that the sale was made for the purpose of raising money wherewith to pay *Blake's* debt ; and the proceeds of the sale have been so applied. The property of *Pottle* thus *appears* to have been honestly appropriated to the payment of one of his debts. Whether the whole transaction was *in reality* a fraud, is a question of fact for the jury to decide, on such proof as the defendant can produce. Unless there was such fraud, we are satisfied that the action is maintainable ; of course, the nonsuit must be set aside and the cause stand for trial.